(Decided 3rd December, 1880.)

---

AMOS SHAEFFER, Executor of SAMUEL SHAEFFER *vs.* JOHN SHAEFFER OF M.

*Dinner and horse feed furnished persons attending a Funeral, not allowable as part of the Funeral Expenses of the Deceased—Construction of Art. 93, sec. 5, of the Code.*

In an action against an executor, one of the items of claim was for dinner and horse feed, furnished at the house of the plaintiff, on the day of the burial of the deceased, after the funeral had taken place, to persons who had attended the funeral. The deceased had lived for a considerable time with, and died in the house of the plaintiff. The charge was sought to be maintained, by what was said to be a custom in the neighborhood. By the Code, Art. 93, sec. 5, as modified by the Act of 1874, ch. 155, it is provided that

funeral expenses shall be allowed at the discretion of the Orphans' Court, according to the condition and circumstances of the deceased. The plaintiff's claim was laid before the Orphans' Court, and that Court declared that the account would pass when paid. HELD :

1st. That said order had no effect to establish the validity of the claim as against the opposition of the executor. The whole import of the order was, that if the executor should think proper to pay the claim, he would be entitled to receive credit therefor in his account.

2nd. That the charge for dinner and horse feed furnished to persons who had attended the funeral of the deceased, was not a proper and legitimate charge as part of the funeral expenses. Nor could the claim be aided or controlled in any manner by neighborhood custom.

3rd. That even if the charge had been incurred at the special instance and request of the defendant, there could be no recovery in this action against him in his representative character.

APPEAL from the Circuit Court for Carroll County.

The nature of the case is stated in the opinion of the Court.

*First Exception.*—After the plaintiff's evidence had been introduced, the defendant offered to prove by Mrs. Margaret Shaeffer, a competent witness, that on the 4th day of September, 1877, she was present and saw the said Samuel Shaeffer send the witness Shellman Garrett to the place where said Samuel kept his pocket-book for the purpose of bringing said pocket-book to him, said Samuel; that she saw said witness, Garrett, bring said pocket-book to said Samuel, and saw said Samuel open the same, and that she saw a considerable amount of money and large number of bank notes therein, to an amount of at least $30, $40 or $50; that she saw said Samuel look over said notes, and take out therefrom a $1 note and give it to said Garrett, and tell him to purchase therewith some

articles of food or medicine, or whiskey or brandy, for the immediate use of said Samuel in his said sickness. And the defendant stated to the Court that this proof was offered in connection with the proof of said Garrett, who had testified for plaintiff, and on cross-examination by defendant's counsel, to the effect that he did not see, and did not have in his possession, the pocket-book of said Samuel on said 4th September, 1877 ; and his further proof, that the said Samuel had said pocket-book in his own possession during a part of his said last sickness, and that said Samuel was confined by illness to his bed, and then, during his said last illness, that is to say, during the entire month of September, 1877, and up to his death, and his further proof that witness never saw said pocket-book, except on one occasion, during said sickness, and during the latter part of said sickness, and then it was in the possession of plaintiff's wife, and that at that time there was in said pocket-book only the sum of $1 and 30 to 40 cents, and the defendant stated to the Court that he would follow up said proof with further proof, that on the death of said Samuel, the defendant, after he obtained letters testamentary, called on the plaintiff, and demanded from him the pocket-book of said Samuel, and whatever cash money the said Samuel had in possession at his death, and that plaintiff denied that said Samuel had any money at his death, and refused to account for or deliver to defendant any of said money aforesaid.

And the defendant, on being required by the Court, stated that his object in offering said proof was two-fold.

1st. To contradict the witness, Garrett.

2nd. To enable the jury to find therefrom, if the jury thought proper to do so, in connection with all the other evidence in the cause, that the said money of the said Samuel had been used and applied in the purchase of necessaries in his last illness, and medicines and liquors, and that the same had not been furnished by the plaintiff

at his cost, as claimed by the plaintiff in this cause, and as competent evidence in this case.

The Court (HAMMOND and HAYDEN, J.,) decided that the defendant might offer proof for the purpose of proving that on said 4th day of September, 1877, the said Samuel gave to said Garrett any specified sum of money to expend in purchasing necessaries of food for said Samuel, but that said proof offered was not admissible, except to that extent, and for that purpose, and none other of said proof offered was competent and admissible in this cause. The defendant excepted.

*Second Exception.*—The plaintiff offered two prayers and the defendant seventeen, which are omitted, as their nature is sufficiently stated in the opinion of the Court, and their introduction would encumber without elucidating the case. The Court granted the plaintiff's two prayers, and rejected all the prayers of the defendant, except the sixth and ninth, which were rejected as offered, but granted with a modification. The defendant excepted, and the verdict and judgment being rendered against him, he appealed.

The cause was argued before BARTOL, C. J., MILLER, ALVEY, and IRVING, J., for the appellant, and submitted on brief for the appellee.

*William P. Maulsby*, for the appellant.

*John E. Smith* and *William E. McKellip*, for the appellee.

ALVEY, J., delivered the opinion of the Court.

This action was brought against the defendant in his representative character of executor; and the claim sought to be recovered is for work, services, and board furnished the deceased in his life-time, and for things charged as

funeral expenses.    The case was tried on the general issue plea of non-assumpsit.

We think the Court below was clearly right in its ruling as stated in the first bill of exception.    The fact allowed to be proved was the only part of the offer by the defendant that would appear to have any relevancy to the issue on trial; and all the rest of the offer, therefore, was properly excluded.    To have admitted in evidence all the offer as made, would have tended to raise a false issue before the jury, and that the Court should always be careful to avoid.

The principal subject of controversy on this appeal is the claim of the plaintiff for $100, charged in his account as for funeral and other expenses.    As we have stated, the action is against the defendant in his representative character as executor, and the proof on the part of the plaintiff shows that the charge in his account of $100, as for funeral and other expenses, was for dinner and horse feed, furnished at the house of the plaintiff on the day of the burial of the deceased, but after the funeral had taken place, to persons who had attended the funeral.    The deceased had lived for a considerable time with the plaintiff, and died in the house of the latter.    On the day of the funeral, the body was taken to a church some five miles distant for interment, and after the funeral services were over and the body buried, the plaintiff caused an invitation to be given to those present to repair to his house for dinner; and the proof shows that some seventy or eighty persons accepted the invitation and dined with the plaintiff, and that twenty-five or thirty horses, of parties so dining, were also fed by the plaintiff.    It nowhere appears that this entertainment was provided at the instance or request of the defendant; but it seems to have been the unsolicited and voluntary act of the plaintiff.    The charge is sought to be maintained by what is said to be a custom in the neighborhood.

By the Code, Art. 93, sec. 5, as modified by the Act of 1874, ch. 155, it is provided, that funeral expenses shall be allowed at the discretion of the Orphans' Court, according to the *condition* and *circumstances* of the deceased. And, as has been very properly said, no precise sum can be fixed to govern in all cases. It will vary in every instance, not only with the station in life of each particular decedent, but also with the price of the requisite articles at the particular place; and it must also vary with respect to the circumstances, and extent of the decedent's estate. 2 *Wms. Ex'rs*, 831. For while a particular allowance for funeral expenses out of an ample estate to pay debts and legacies might be regarded as in all respects reasonable and proper, such an allowance might be far otherwise as against creditors of an insolvent estate. Hence the allowance is placed at the discretion of the Orphans' Court, supposing that that Court would exercise a sound and rational discretion, with reference to the circumstance of each particular case. The plaintiff's claim was laid before the Orphans' Court, and that Court declared that the account would pass when paid; but that order has no effect to establish the validity of the claim as against the opposition of the executor. He is entirely at liberty to contest the claim, and the plaintiff is required to prove it as if no such order had passed. *Code, Art.* 93, *secs.* 100, 101. The whole import of the order is, that if the executor should think proper to pay the claim he would be entitled to receive credit therefor in his account.

But is the charge for dinner and horse feed furnished to persons who had attended the funeral of the deceased, a proper and legitimate charge as part of the funeral expenses? Clearly, we think not. Nor can the claim be aided or controlled in any manner by neighborhood custom. If custom could enter into the matter, and shape the claim of the plaintiff, that custom, if allowed to be

uniform in its operation, would to a large extent, control the discretion of the Orphans' Court, without respect to the condition and circumstances of the deceased. If custom could authorize the giving of funeral dinners at the expense of the estate of the deceased, the allowance therefor would be proper, whether the estate proved to be solvent or insolvent, or whether the number of persons attending them be eighty or five hundred, or even more. Such entertainments are not the ordinary, and certainly not the necessary, incidents of funerals, nor are they within the contemplation of the law which provides for the allowance of reasonable funeral expenses, having reference to the condition and circumstances of the deceased. Those who think proper to furnish such entertainments must do so from motives of hospitality, and not with design of charging the estate of the deceased.

There is no evidence or pretence that the dinner and horse feed were furnished at the special instance and request of the defendant; but if such had been the case, there could be no recovery in this action against the defendant in his representative character. In such case, recovery could only be had against the defendant personally. *Curtis's Ex'rs vs. Bank of Somerset*, 7 *H. & J.*, 25; *Corner vs. Shew*, 3 *M. & W.*, 350, 356; 2 *Wms. Ex'rs*, 1525.

It follows from what we have said, that the Court below was in error in granting the first and second prayers offered by the plaintiff, and in rejecting the first, second, third, fourth, fifth, fourteenth, fifteenth, sixteenth and seventeenth prayers offered by the defendant. Of these prayers, those on the part of the plaintiff affirm the right to recover for the dinner and horse feed, and those on the part of the defendant deny such right. We think the Court below was right in rejecting all the rest of the defendant's prayers, some because they were misleading, and

Shaeffer, Ex'r *vs.* Shaeffer.

others for the want of evidence upon which to found them. The judgment will therefore be reversed, and a new trial awarded.

*Judgment reversed, and*
*new trial awarded.*

(Decided 9th December, 1880.)